ERWIN W. GORTON and ANN M. GORTON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gorton v. Commissioner
Docket No. 17076-82.
United States Tax Court
T.C. Memo 1985-45; 1985 Tax Ct. Memo LEXIS 582; 49 T.C.M. (CCH) 612; T.C.M. (RIA) 85045; January 30, 1985
Jeffrey L. Shrom, for the petitioners. R. Alan Lockyear, for the respondent. GOFFE
*612 MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The commissioner determined deficiencies in petitioners' Federal income tax for the taxable years 1978, 1979, and 1980 and additions to tax under section 6651(a) [1] and 6653(a) as follows: *613 Additions to Tax
Taxpayer
Year
Deficiency
6651(a)
6653(a)
Erwin W. Gorton and
Ann M. Gorton
1978
$35,817
$1,791
Ann M. Gorton
1979
829
$207
41
Erwin W. Gorton
1979
829
207
41
Ann M. Gorton
1980
5,174
1,294
259
Erwin W. Gorton
1980
5,174
1,294
259
The issues for decision are: (1) whether the transfer of assets from Gorton Farms, Inc., to petitioners on September 30, 1978, was *587 a liquidation; (2) whether the transfer of assets was an early disposition requiring recapture of investment credit under section 47 and recapture of depreciation under section 1245; (3) whether the transfer of assets resulted in a realization of income by petitioners in the amount of Gorton Farms, Inc.'s ending inventory and accounts receivable; (4) whether petitioners realized a long-term capital gain or loss under section 331 upon the transfer of assets to petitioners; (5) whether petitioners owned 100 percent of The Gorton Farms Trust Organization, and the amount of income to be allocated to petitioners from the trust; (6) whether petitioners are liable for self-employment tax under section 1401; and (7) whether the petitioners are liable for additions to tax for failure to timely file a return under section 6651(a), and additions to tax for negligence or intentional disregard of rules and regulations under section 6653(a). *3 FINDINGS OF FACT Some of the facts have been stipulated. The written and oral stipulations of facts and accompanying exhibits are so found and incorporated herein by reference. Erwin W. Gorton (Mr. Gorton) and Ann M. Gorton (Mrs. Gorton), husband *588 and wife, were residents of Greenacres, Washington, at the time their petition in this case was filed. Petitioners timely filed a joint Federal income tax return for the taxable year 1978 with the Internal Revenue Service Center, Ogden, Utah. Petitioners filed on amended joint Federal income tax return for the taxable year 1978 on May 22, 1979. Petitioners did not file an individual or joint Federal income tax return for the taxable year 1979. Petitioners filed a joint Federal income tax return for the taxable year 1980, which was received by the Internal Revenue Service Center in Ogden on April 6, 1982. From 1961 through September 30, 1978, petitioners operated a chicken and egg ranch in Greenacres, Washington, through the entity Gorton Farms, Inc. (the corporation), an electing small business corporation. The corporation filed a Federal small business corporation income tax return for the taxable year ending September 30, 1978, but has filed no return with respect to taxable years ending after that date. On September 30, 1978, the shareholders of the corporation, their respective ownership interests, and officer positions were: *4 Shareholder
Percentage Ownership
Position
Erwin W. Gorton
39
President
Lydia N. Gorton
27
Vice-President
Ann M. Gorton
34
Secretary/Treasurer
*589 Petitioners thus owned 73 percent of the equity of the corporation. All of the corporate officers constituted the Board of Directors of the corporation. Lydia N. Gorton is Erwin W. Gorton's mother, and relies on her son for all business decisions and the filing of her income tax returns. The corporation used on accrual method of accounting for book purposes and a cash method of accounting for tax purposes. Although the corporation recorded inventory on its books and records, purchases of inventory were currently deducted in full each year on its Federal income tax returns. Similarly, the corporation maintained an accounts receivable account on its books and records, but recognized and reported as sales for Federal income tax purposes only accounts receivable when collected. As of September 30, 1978, the values of the corporation's inventory and accounts receivable were $57,296 and $10,803, respectively. The amount of depreciation under section 1245, previously claimed as deductions and subject to recapture upon early disposition, was $29,503. At a shareholder meeting of the corporation held on September 29, 1978, the shareholders unanimously resolved that: *5 *590 [A]ll the shares of stock in Gorton Farms, Incorporated be exchanged into a Pure Trust Organization. Whereas the Pure Trust Organization will function as an unincorporated business for the conservation of the assets for our use, and the children and succeeding heirs. At a meeting of the Board of Directors of the corporation held the same day, the following resolution was unanimously passed: "That Gorton Farms, Incorporated, a Sub-Chapter S Corporation, will cease to do business and will now be a Pure Trust Organization." The corporation distributed all of its assets and liabilities to petitioners. Lydia N. Gorton received none of the distribution. [2] No section 333 election was made, as petitioners treated the receipt of these items, and their subsequent contribution to the trust, as a tax-free exchange. The distribution was of the following items: Assets
Liabilities
Cash
$ 274
Accounts Payable
$13,223
Accounts Receivable
10,803
Mortgages, Notes,
Inventory
57,296
Bond Payable
6,978
Depreciated Assets
81,868
Accrued Taxes
2,119
Other Assets
500
Other Payable
18,327
$150,741
$40,647
*591 The corporation's final return for the taxable year ending September 30, 1978, did not include any recapture of depreciation or recapture of investment tax credit, nor did it reflect the *6 distribution of the above items. The undistributed taxable income shown on the final return as taxable to the corporation's shareholders was $12,333 for the taxable year ending September 30, 1977, and $12,716 for the taxable year ending September 30, 1978. On October 1, 1978, an organization known as The Gorton Farms Trust Organization (the trust) was created by a document titled "Contract and Declaration of Trust." Under the terms of this document, Erwin W. Gorton transferred all assets of the corporation to the trust in exchange for 100 Trust Certificate Units. The Trust Certificate Units themselves, however, were issued on the same day, October 1, 1978, as follows: Ownership
Name
Interest
Erwin Willard Gorton
47-1/2
Ann Marie Gorton
47-1/2
Lydia N. Gorton
5
Lydia N. Gorton had no personal knowledge of any ownership interest in the trust. Real estate and the buildings and improvements thereon were also contributed by the petitioners to the trust in *592 October 1978. The property was previously transferred to petitioners jointly by Lydia N. Gorton on July 14, 1976. The combined value of the real *7 estate and buildings was $78,000: $27,000 for the real estate and $51,000 for the buildings and improvements. Lydia N. Gorton's basis in this property is zero. The trust continued the operation of the chicken and egg ranch without change. The trust was formed for the purpose of conserving the assets of the ranch for estate planning purposes, and not to avoid or evade taxes. Because of petitioners' economic circumstances, petitioners were advised by their financial planner that there would be no income tax consequences to the new operational form, and that the transaction should be essentially tax-free. The trust filed fiduciary Federal income tax returns for the taxable years ending September 30, 1979, and September 30, 1980. These returns reported net losses of $10,069 for the taxable year ending September 30, 1979, and $26,357 for the taxable year ending September 30, 1980. In his statutory notice of deficiency for petitioners' taxable year 1978, dated April 7, 1982, the Commissioner treated the transfers of the corporate *593 assets to the trust as a three-step process: (1) liquidation of the corporation; (2) a pro rata distribution to petitioners upon redemption of their shares; and (3) the contribution of all of the assets to a grantor trust. The Commissioner determined that several adjustments were necessary to reflect the effects of this characterization of the transfers. *8 First, the Commissioner determined that petitioners' income should be adjusted to include 73 percent of the value of the cash basis accounts receivable of $10,803, and inventory of $57,296, distributed upon liquidation. The Commissioner determined that the liquidation was also a disposition resulting in: (1) recognition to petitioners of 73 percent of the depreciation recapture under section 1245 of $29,503; and (2) recognition to petitioners of 73 percent of the investment credit recapture under section 47 of $2,328. The Commissioner determined further that petitioners were entitled to an investment tax credit of 73 percent of the investment tax credit of $1,152 claimed by the corporation on its return for the taxable year ending September 30, 1978. The Commissioner also determined that petitioners realized a long-term *594 capital loss of $9,167 upon the distribution of the corporate assets to them in redemption of their shares. This loss was computed by adding the values of the inventory and accounts receivable, and the proposed section 1245 recapture amounts, to the undistributed taxable income for the taxable years 1977 and 1978 reported on the corporation's final return for the taxable year ending September 30, 1978, offset by the net *9 assets distributed in liquidation, resulting in an allocation to petitioners of 73 percent of the resultant loss, or 73 percent of $12,557. [3]
In his statutory notice for petitioners' taxable year 1978, the Commissioner further determined that petitioners were the actual or constructive owners of 73 percent of the trust to which the corporate assets were transferred. As a result, all of the income *595 and deductions claimed by the trust on its returns were adjusted from the taxable year of the trust to petitioners' taxable year. Deductions for gasoline and legal expenditures made by the trust were disallowed. The Commissioner thus determined that petitioners were liable for income tax on $3,502, which is 73 percent of the net income of the trust of $4,797 for the period from October 1 through December 31, 1978. The Commissioner also determined that petitioners were liable for self-employment tax of $284 under section 1401 for the taxable year 1978. *10 Finally, the Commissioner determined that petitioners were liable for an addition to tax under section 6653(a) in the amount of $1,791 due to their negligence or intentional disregard of rules and regulations. The Commissioner issued numerically identical statutory notices of deficiency, dated April 7, 1982, to each petitioner, for the taxable years 1979 and 1980. Mr. Gorton and Mrs. Gorton were each allocated one-half of 73 percent of the trust's net income for petitioners' taxable years 1979 and 1980, or $7,191 and $19,317, respectively. The Commissioner calculated these amounts by using the income and expenditures *596 claimed on the trust's Federal income tax returns for the period from January 1, 1979, through September 30, 1980. Income for the period from September 30, 1980, through December 31, 1980, was calculated by taking one quarter of the gross profits of the trust as of September 30, 1980, without adjustment for expenses or deductions. The portion of the capital loss from the disposition of the corporate stock that was in excess of the deduction limitations of section 1211 for the taxable year 1978, in the amount of $792, was allowed as a deduction for the taxable year 1979 for each petitioner. The Commissioner determined that petitioners were each liable for an addition to tax under section 6653(a) of $41 for the taxable year 1979 and $259 for the taxable year 1980. As petitioners' Federal income tax returns were not *11 filed within the time prescribed by law, an addition to tax under section 6651(a) of $207 for 1979 and $1,294 for 1980 was also imposed on each petitioner. At trial, respondent conceded that petitioners had substantiated increases in the expenses of the trust over the amounts allowed in the statutory notices for cost of goods sold in the amounts of $4,801.75, *597 $22,987.75 and $25,747.50 for petitioners' taxable years 1978, 1979 and 1980, respectively; gas and oil expenses of $2,200 and $4,000 for petitioners' taxable years 1979 and 1980, respectively; and telephone expenses of $325 for petitioners' taxable year 1979. Respondent further conceded that the depreciable basis and remaining useful life for the assets transferred to the trust are to be determined, for purposes of section 1245, using the depreciable basis and life for each asset shown on the final corporate return for the taxable year ending September 30, 1978. Respondent conceded that petitioners' basis in their Gorton Farms, Inc., stock on September 30, 1978, was $3,279. Respondent further conceded, if he should prevail on the inventory and accounts receivable issues, that the corporation was entitled to additional expenses of $15,343, deductible against the present taxable income of $12,716 for the corporation's taxable year ending September 30, 1978. Finally, respondent stipulated to a number of corrections *12 in computations which reduced the total amount of trust income attributed to each of the petitioners for the taxable year 1980 from $19,317 to $13,107. Respondent *598 filed an amendment to his answer after trial, alleging that petitioners were the owners of 100 percent of the trust assets and income, rather than 73 percent, on the basis that Lydia N. Gorton, Mr. Gorton's mother, owned no portion of the trust. The amount of income reallocated from the trust to petitioners was adjusted upwards appropriately, resulting in increases in the deficiencies and additions to tax determined for the taxable years 1978 and 1979. Because of the computation errors in the statutory notices for the taxable year 1980, the revisions did not increase the deficiency for that year. The new figures, after all adjustments, are: Additions to Tax
Taxpayer
Year
Deficiency
6651(a)
6653(a)
Erwin W. Gorton and
Ann M. Gorton
1978
$36,568
$1,828
Ann M. Gorton
1979
1,526
$382
76
Erwin W. Gorton
1979
1,526
382
76
Ann M. Gorton
1980
5,174
1,294
259
Erwin W. Gorton
1980
5,174
1,294
259
By order of the Court, dated December 27, 1983, all allegations in the amended answer were deemed denied. *13 OPINION The issues for decision are: (1) whether the transfer of assets from Gorton Farms, Inc., to petitioners *599 on September 30, 1978, was a liquidation; (2) whether the transfer of assets was an early disposition requiring recapture of investment credit under section 47 and recapture of depreciation under section 1245; (3) whether the transfer of assets resulted in a realization of income by petitioners in the amount of Gorton Farms, Inc.'s ending inventory and accounts receivable; (4) whether petitioners realized a long-term capital gain or loss under section 331 upon the transfer of assets to petitioners; (5) whether petitioners owned 100 percent of The Gorton Farms Trust Organization, and the amount of income to be allocated to petitioners from the trust; (6) whether petitioners are liable for self-employment tax under section 1401; and (7) whether the petitioners are liable for additions to tax for failure to timely file a return under section 6651(a), and additions to tax for negligence or intentional disregard of rules and regulations under section 6653(a). The Commissioner's determinations in his statutory notice of deficiency are presumptively correct, and petitioners have the burden of disproving each individual adjustment. Welch v. Helvering,290 U.S. 111 (1933); *600 Rule 142(a). *14 Respondent argues first that the transfer of assets of the corporation to petitioners, and then to the trust, was a liquidation under section 336 resulting in a long-term capital loss. Petitioners have offered conclusions of law, but no evidence on this issue. Petitioners argue that the transfers were part of a Type "C" reorganization. Petitioners have failed, however, to prove that the trust receiving the assets was a corporation during the taxable years at issue, a preliminary requirement under section 368(a)(1)(C). Further, petitioners contend on brief that section 1244 applies and that petitioners' gain or loss, if the Court finds that the transfer is a liquidation, is ordinary rather than capital. However, no evidence was presented that the requisite section 1244 plan existed. The Commissioner's determinations that the transfer was a liquidation, and that any gain or loss under section 331 was capital, not ordinary, are sustained. Rule 142(a). The parties, nonetheless, disagree on the consequences of the liquidation of the corporation and operation of the trust. A number of preliminary issues must be decided in order to determine the amount *601 of the long-term capital gain or loss taxable to petitioners. The second issue is, therefore, whether the post-1961 depreciation and the investment tax credit must be recaptured upon liquidation. *15 Recapture of depreciation is dependent upon a triggering disposition. Sec. 1245. The transfer of assets from the corporation to petitioners was a liquidation under section 336 which provides: Except as provided in section 453(d) (relating to disposition of installment obligations), no gain or loss shall be recognized to a corporation on the distribution of property in partial or complete liquidation. The nonrecognition provision of section 336 is, however, overriden by the precise language of section 1245. Hillsboro National Bank v. Commissioner,460 U.S. 370 (1983), revg. and remanding United States v. Bliss Dairy, Inc.,645 F.2d 19 (9th Cir. 1981). The pertinent parts of section 1245 provides: SEC. 1245. GAIN FROM DISPOSITIONS OF CERTAIN DEPRECIABLE PROPERTY. (a) General Rule.-- (1) Ordinary Income.--Except as otherwise provided in this section, if section 1245 property is disposed of during a taxable year beginning after December 31, 1962, the *602 amount by which the lower of-- (A) the recomputed basis of the property, or (B) (i) in the case of sale, exchange, or involuntary conversion, the amount realized, or (ii) in the case of any other disposition, the fair market value of such property, exceeds the adjusted basis of such property shall be treated as ordinary income. Such gain shall be recognized notwithstanding any other provision of this subtitle. [Emphasis added.] *16 Section 1245 thus provides for taxation at ordinary income rates of gains from the disposition of certain depreciable assets to the extent of post-1961 depreciation allowed, even if the disposition is by a liquidation under section 336. Petitioners bear that burden of proving that the value of the distributed depreciated assets was other than the value determined in the statutory notice of deficiency. Welch v. Helvering,supra; Rule 142(a). Although we find Mr. Gorton to be a credible and forthright witness, no precise facts were offered from which to determine any decrease in the fair market value of the assets from the values determined in the statutory notice. The Commissioner's determination is, therefore, *603 sustained. Rule 142(a). In the absence of other evidence, the useful life of the assets shall be determined with respect to the corporation's final return in accord with respondent's concession at trial. The second item of potential recapture is the investment tax credit under section 47. Petitioners contend that the trust continued operating the chicken and egg ranch in precisely the same manner as had the corporation and that the liquidation, therefore, resulted in nothing but a change in the form in which the business was conducted. Respondent argues that the liquidation was not a "mere change in form" but rather a disposition triggering recapture of the investment tax credit under section 47, the pertinent parts of which read: *17 SEC. 47. CERTAIN DISPOSITIONS, ETC., OF SECTION 38 PROPERTY. (a) General Rule.--Under regulations prescribed by the Secretary-- (1) Early Disposition, Etc.--If during any taxable year any property is disposed of, or otherwise ceases to be section 38 property with respect to the taxpayer, before the close of the useful life which was taken into account in computing the credit under section 38, then the tax under this chapter for such *604 taxable year shall be increased by an amount equal to the aggregate decrease in the credits allowed under section 38 for all prior taxable years which would have resulted solely from substituting, in determining qualified investment, for such useful life the period beginning with the term such property was placed in service by the taxpayer and ending with the time such property ceased to be section 38 property. * * * (b) Section Not To Apply In Certain Cases.-- * * * For purposes of subsection (a), property shall not be treated as ceasing to be section 38 property with respect to the taxpayer by reason of a mere change in the form of conducting the trade or business so long as the property is retained in such trade or business as section 38 property and the taxpayer retains a substantial interest in such trade or business. Respondent cites Long v. United States,652 F.2d 675 (6th Cir. 1981), in which four prerequisites for a finding of "mere change in form" were upheld. Section 1.47-3(f)(1)(ii), Income Tax Regs., provides that certain conditions must be met to avoid recapture of investment tax credit: (a) The section 38 property * * * is retained as *605 section 38 property in the same trade or business, *18 (b) The transferor (or in a case where the transferor is a partnership, estate, trust, or electing small business corporation, the partner, beneficiary, or shareholder) of such section 38 property retains a substantial interest in such trade or business, (c) Substantially all the assets (whether or not section 38 property) necessary to operate such trade or business are transferred to the transferee to whom such section 38 property is transferred, and (d) The basis of such section 38 property in the hands of the transferee is determined in whole or in part by reference to the basis of such section 38 property in the hands of the transferor. In Long v. United States,supra, the facts were virtually identical to those in the present case. A Subchapter S corporation was liquidated, distributing property which qualified for investment tax credit to the taxpayers. As here, the first three of the necessary conditions were clearly met. The taxpayer in Long argued that the fourth requirement of carryover basis was invalid and exceeded the scope of the statute. The Court of Appeals *606 for the Second Circuit disagreed, finding that the requirements of a "mere change in form" and a carryover basis are both mandatory for the application of section 47(b)'s exemption from recapture. The basis of assets distributed in a liquidation is generally determined under section 334(a), which provides: (a) General Rule.--If property is received in a distribution in partial or complete liquidation * * *, and if gain or loss is recognized on receipt of such property, then the basis of the property in the hands of the distributee shall be the fair market value of such property at the time of the distribution. *19 In the present case, petitioners will recognize gain or loss on the receipt of the property received in the course of the liquidation of the corporation under section 331, and their basis in the distributed assets is, therefore, each asset's fair market value under section 334(a), and not the carryover basis required by section 1.47-3(f)(1)(ii), Income Tax Regs. The "mere change in form" exception of section 47(b), therefore, does not apply. Long v. United States,supra;Ramm v. Commissioner,72 T.C. 671 (1979). The Commissioner's *607 determination that petitioners must recapture the investment tax credit is sustained. Rule 142(a). The third issue for decision is whether the distribution of the inventory and accounts receivable results in a recognition of gain. Respondent asserts that petitioners must recognize gain upon the distribution, arguing that the tax benefit rule and the assignment of income doctrine override the nonrecognition provision of section 336. Petitioners contend that, if the termination is a liquidation, the nonrecognition provision in section 336 prevails. The solution to this controversy, although unclear during the taxable years at issue, has recently been clarified by the U.S. Supreme Court in Hillsboro National Bank v. Commissioner,460 U.S. 370 (1983), revg. and remanding United States v. Bliss Dairy, Inc.,645 F.2d 19 (9th Cir. 1981). As discussed above, petitioners are entitled to a step-up in basis for each asset to the fair market value at the time of distribution under section 334(a). As the inventory was expensed *20 by the corporation in previous years, the same assets could be expensed again, under section 162(a), in the course of *608 the continued operation of the farm resulting in a double deduction for these items. Further, the corporation would have received the benefit of the deduction without using these items in its business, as intended by section 162(a). These fortuitous, but unintended, results lie behind the formation of the tax benefit rule. That rule, stated in its simplest form, is that if an amount deducted from gross income in one taxable year is recovered in a later year, the recovery is income in the later year." 1 J. Mertens, Law of Federal Income Taxation, sec. 7.34, p. 114 (1981 rev.). The Supreme Court expressly found that section 336 has never been interpreted by the courts as an absolute bar to recognition of income, citing such statutory exceptions as section 1245. Hillsboro National Bank v. Commissioner,supra at 398. In the present case, the liquidation and distribution of the investory at fair market value to petitioners is fundamentally inconsistent with the deduction taken for the inventory under section 162 by the corporation. Hillsboro National Bank v. Commissioner,supra at 395-396. The tax benefit rule therefore applies, overriding *609 section 336. The Commissioner's determination that petitioners, as shareholders of an electing *21 small business corporation, must recognize income in the amount of the distributed inventory is, therefore, sustained. Rule 142(a). The assignment of income doctrine has always applied to distirubitions in liquidation. Hillsboro National Bank v. Commissioner,supra at 398; Williamson v. United States,292 F.2d 524 (Ct. Cl. 1961). The accounts receivable represent income earned by the corporation, although not yet recognized at the time of distribution. As the accounts receivable receive a step-up in basis under section 334(a), this income would escape taxation by either the party earning it, or the party to whom the income was assigned. The accounts receivable distributed by a liquidating cash basis corporation are included in income by the corporation for its last taxable year despite the nonrecognition provisions of section 336. Commercial Security Bank v. Commissioner,77 T.C. 145, 148 (1981); Midland-Ross Corp.,Transferee v. United States,485 F.2d 110 (6th Cir. 1973). The Commissioner's determination *610 that the distribution of the accounts receivable should be included in petitioners' income as shareholders in the Subchapter S corporation is sustained. The recapture items, inventory, and accounts receivable are all income to the corporation in its final taxable year ending September 30, 1978. As a result, under section 1373(a), petitioners are liable for taxes on 73 percent of the *22 undistributed taxable income, but receive a corresponding increase in the basis of their stock under section 1376(a) for the computation of gain or loss under section 331. The net result of the above findings is as follows: (1) Petitioners, as shareholders of a small business electing corporation, must recognize these amounts as undistributed taxable income for the taxable year 1978: Inventory
$57,296 Accounts receivable
10,803 Depreciation recapture
29,503 Undistributed taxable income as
of September 30, 1978
(2,627)
Total
$94,975 73 percent of which is:
69,332 (2) Petitioners are liable for recapture of investment tax credit of $1,700, but are entitled to 73 percent of the investment tax credit of $1,152 taken by the corporation on its final return. *611 (3) The amount of the liquidation distribution taxable to petitioners under section 331 is: Net assets distributed in liquidation
$100,094 Less 73 percent previously taxed income: Undistributed income taxable as
of September 30, 1977
$12,333
(9,003)
Undistributed income taxable as
of September 30, 1978
94,975
(69,332)
Less petitioners' cost basis
(3,279)
Long-term capital gain
$ 28,480 *23 (4) The assets distributed to petitioners and contributed to the trust have a basis of fair market value under section 334(a), and are to be depreciated using the remaining life shown on the corporation's final return. The trust formed immediately after the liquidation was determined by the Commissioner to be a grantor trust under sections 671-678, resulting in attribution of all income and expenses of the trust to petitioners as grantors. Petitioners have not contested the Commissioner's characterization of the trust, and the Commissioner's determination is, therefore, sustained. Rule 142(a). In his statutory notice, the Commissioner determined that petitioners were the owners of 73 percent of the trust, assuming a parallel to the ownership *612 of the corporation. Respondent later asserted, at trial and by way of a subsequent amended answer, that petitioners were the sole owners of the trust which received the assets of the corporation, on the basis that Lydia N. Gorton, Mr. Gorton's mother, had no ownership interest in the trust. We have previously deemed these allegations denied; therefore, the respondent bears the burden of proof on these matters. Rules 37(c), 142(a). It is clear that the ownership of the trust was different from that of the corporation, but we are unable to find that respondent has proved that petitioners are 100 percent owners of the trust. We find no inconsistency between the stock *24 certificates indicating that Lydia N. Gorton owned five percent of the trust and her affidavit indicating a lack of knowledge of that ownership. Lydia N. Gorton, who is 82 years old, stated by affidavit that she relies on her son's business decisions and that he files her tax returns for her. Respondent has failed to meet his burden of proving that Lydia N. Gorton is not an owner; and, after reviewing all of the evidence, we find that Lydia N. Gorton owns five percent of the trust. Rule 142(a). The total *613 amount of income earned by the trust, 73 percent of which was to be taxed to petitioners, was determined in the statutory notice, after adjustment from the taxable year of the trust to petitioners' taxable year and computation corrections to be $4,798.00 of net income for petitioners' taxable year 1978, $19,700.50 of net income for petitioners' taxable year 1979, and $35,909.75 [4] in income for petitioners' taxable year 1980. Respondent has conceded additional deductions in the amounts of $4,801.75, $22,987.75 and $25,747.50 for cost of goods sold for petitioners' taxable years 1978, 1979 and 1980, respectively. Additional deductions have also been conceded in the amounts of $2,200 and $4,000 for gasoline and oil expenses for petitioners' taxable years 1979 and 1980, and in the amount of $325 for telephone expenses for petitioners' taxable year 1979. Although petitioners were both credible and trustworthly witnesses, they *25 did not present sufficient evidence to meet their burden of proof as to additional deductions claimed for oil and gasoline expenses, and legal and accounting expenses. Rule 142(a). [4]
*614 These amounts, without further adjustment, therefore result in a net loss for each of petitioners' taxable years 1978 and 1979, in the amounts of $4.75 and $5,812.25, respectively, and a net income of $6,161.25 for petitioners' taxable year 1980. The determination of the actual losses will require the computation of depreciation based on the step-up in basis to fair market value of the assets transferred from the corporation to the trust through petitioners, the expensing of any inventory deductible under section 162(a), and the correction of numerous computation errors. Respondent did not allow depreciation on the property received by petitioners as a gift from Lydia N. Gorton, and contributed by them to the trust. The basis for computation of depreciation, under section 1015, is the carryover basis of the donor. In the absence of any evidence as to that basis, the Commissioner's determination that there is a zero basis in this property for purposes of depreciation is sustained. Rule 142(a). As the trust is held to have no net income for petitioners' taxable year 1978, the self-employment tax under section 1401 is not imposed. *26 Petitioners bear the burden of *615 proof with respect to the additions to tax. Luman v. Commissioner,79 T.C. 846, 860 (1982); Bixby v. Commissioner,58 T.C. 757, 791 (1972). Petitioners presented no evidence that they had reasonable cause for their failure to file their joint Federal income tax return for the taxable year 1979 and failure to timely file their joint Federal income tax return for the taxable year 1980, and the additions to tax under section 6651(a) for the taxable years 1979 and 1980 are sustained. We find, however, that petitioners have met their burden of proof with respect to the additions to tax under section 6653(a). Petitioners testified that they sought advice as to the tax consequences of their proposed actions. A taxpayer may not be liable if he can show that he reasonably relied on advice from competent tax experts. Industrial Valley Bank & Trust Co. v. Commissioner,66 T.C. 272, 283 (1976). In fact, the issue of the interaction of section 336 and the tax benefit rule, as applied to petitioners' factual circumstances, was uncertain until its partial resolution in Hillsboro National Bank v. Commissioner,supra. *616 Petitioners' testimony that they acted in good faith and with every intention of complying with the requirements of the tax rules and regulations was credible and trustwothly. Further, we do not believe that the instant case is an example of the use of a family trust to evade taxes, a well-established basis for the imposition of the addition to tax under section 6653(a). *27 Hanson v. Commissioner,696 F.2d 1232, 1234 (9th Cir. 1983), affg. a Memorandum Opinion of this Court. Accordingly, we hold that petitioners are not liable for the additions to tax under section 6653(a). Decision will be enteredunder Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the relevant years, and all rule references are to this Court's Rules of Practice and Procedure.↩
2. The income tax and gift tax consequences of this distribution for Lydia N. Gorton are not before this Court, nor has there been any argument made as to the propriety or characterization of the unequal distribution under State or Federal law.↩
3. The computation is as follows: ↩
Net assets distributed in liquidation
$110,094 Less: Undistributed taxable income
as of September 30, 1977
$12,333
Accounts receivable
10,803
Inventory
57,296
Section 1245 recapture
29,503
Undistributed taxable income
reported as of September 30,
1978
12,716
122,651 ($12,557)
4. This amount was computed by adding the net income for the period from January 1 through September 30, 1980, $15,921.75, to one-quarter of the gross profit on September 30, 1980, or one-quarter of $79,948.↩